**No. 24-3863**


**IN THE UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT**


**CHRISTINA HENRY**,

              Plaintiff-Appellant,

    -vs-

**SOUTHERN OHIO MEDICAL
CENTER**,

              Defendant-Appellee.

On Appeal from the United States
District Court for the Southern
District of Ohio
(No. 1:22-cv-00679)

---

### BRIEF OF PLAINTIFF-APPELLANT

---

Warner Mendenhall (0070165)
Brian Unger (0096884)
MENDENHALL LAW GROUP
190 North Union Street, Suite 201
Akron, Ohio 44304
(330) 535-9160
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff-Appellant
Christina Henry*

# **TABLE OF CONTENTS**

TABLE OF CONTENTS ................................................................ ii

TABLE OF AUTHORITIES........................................................ iv

STATEMENT REGARDING ORAL ARGUMENT ....................................1

JURISDICTIONAL STATEMENT ................................................2

ISSUES PRESENTED ................................................................3

STATEMENT OF THE CASE ......................................................4

    I.    Ms. Henry's history with SOMC and her experience with SOMC's accommodation process.........................................................4

    II.    Ms. Henry sues and appeals..............................................10

SUMMARY OF ARGUMENT....................................................13

ARGUMENT............................................................................15

    I.    Standard of Review..........................................................15

    II.    Assignment of Error I: The District Court erred in granting summary judgment in SOMC's favor on Ms. Henry's failure-to-accommodate claim.......................................................................16

      A. Ms. Henry satisfies the *prima facie* case for her failure-to-accommodate claim. .........................................................16

      B. Proving the fact issue of undue hardship under Title VII; issues of fact are generally reserved to the jury. .............................16

      C. SOMC would suffer no hardship by letting Ms. Henry take either the oropharyngeal or anterior nares test as SOMC was equipped to validate both tests on site and administered the oropharyngeal test to certain employees. ..........................................................18

      D. It is the employer's burden to accommodate the employee; the employer has an obligation to attempt accommodation. SOMC did not attempt to accommodate Ms. Henry's testing objection. ...........19

E.  SOMC did not accommodate Ms. Henry. ........................................24

F.  The district court improperly found Ms. Henry's objection was to all testing regardless of the type. ...........................................................27

G.  SOMC did not show that a 48-hour testing turnaround time would have caused SOMC undue hardship had it let Ms. Henry take a saliva test............................................................................................29

H.  The district court erred in determining Ms. Henry's affidavit was an attempt to create a sham fact issue. ...................................................33

I.  Other Courts have denied summary judgment where evidence of undue hardship was insufficient to take the issue from the jury. .....38

J.  SOMC did not fulfill its obligations under Title VII and failed to show undue hardship; the district court erred in finding SOMC established undue hardship. ...............................................................43

III.  Assignment of Error II: The District Court erred in granting summary judgment for SOMC's on Ms. Henry's retaliation claim. 44

CONCLUSION................................................................................................49

CERTIFICATE OF COMPLIANCE ...........................................................50

CERTIFICATE OF SERVICE .....................................................................50

# TABLE OF AUTHORITIES

CASES                                                                    PAGE(S)

*Abbott v. Crown Motor Co.*, 348 F.3d 537 (6th Cir. 2003) ...................................44

*Adeyeye v. Heartland Sweeteners, LLC*, 721 F.3d 444 (7th Cir. 2013) ................ 20

*Aerel, S.R.L. v. PCC Airfoils, L.L.C.*, 448 F.3d 899 (6th Cir. 2006) ............... 33, 36

*Anderson v. Gen. Dynamics Convair Aerospace Div.*,
 589 F.2d 397 (9th Cir. 1978) ............................................................... 30

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242 (1986)................................... 15, 18

*Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60 (1986)................................. 25, 26

*Brown v. General Motors Corp.*, 601 F.2d 956 (8th Cir. 1979)............................ 29

*Brown v. Polk Cnty., Iowa*, 61 F.3d 650 (8th Cir. 1995)........................................ 30

*Bruce v. Levy Premium Foodservices Ltd. P'ship of Tennessee*,
 324 F. Supp. 3d 962 (M.D. Tenn. 2018)...............................................................48

*Cox v. Nw. Reg'l Educ. Serv. Dist.*, No. 3:22-CV-01073-HZ,
 2024 WL 777598 (D. Or. Feb. 23, 2024) .......................................................... 42

*Dawson v. Akal Sec. Inc.*, 660 F. App'x 504 (9th Cir. 2016)................................. 26

*Dews v. A.B. Dick Co.*, 231 F.3d 1016 (6th Cir. 2000) ................................... 46, 47

*Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515 (6th Cir. 1975)...................... 30

*E.E.O.C. v. Alamo Rent-A-Car LLC*, 432 F. Supp. 2d 1006
 (D. Ariz. 2006) ................................................................................................ 30

*E.E.O.C. v. Arlington Transit Mix, Inc.*, 957 F.2d 219 (6th Cir. 1991) 17, 21, 22, 23

*E.E.O.C. v. Robert Bosch Corp.*, 169 F. App'x 942 (6th Cir. 2006) ............... 17, 20

iv

*E.E.O.C. v. Texas Hydraulics, Inc.*, 583 F. Supp. 2d 904
   (E.D. Tenn. 2008) ........................................................................ 20, 21

*Floyd v. Trinity Cent. Home Health, LLC*, No. 6:22-CV-06117,
   2024 WL 3653055 (W.D. Ark. Aug. 5, 2024)................................... 39

*Gibson v. Foltz*, 963 F.2d 851 (6th Cir. 1992)....................................... 15

*Gray v. Main Line Hosps., Inc.*, 717 F. Supp. 3d 437
   (E.D. Pa. 2024)................................................................................ 40

*Great W. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955
   (S.D. Ohio 2009).......................................................................... 34, 36

*Groff v. DeJoy*, 600 U.S. 447 (2023) ............... 17, 18, 19, 20, 22, 23, 26, 39, 40, 43

*Hamilton v. Gen. Elec.*, 556 F.3d 428 (6th Cir. 2009)............................ 45

*Hayslett v. Tyson Foods, Inc.*, No. 1:22-CV-1123-STA-JAY,
   2023 WL 11897503 (W.D. Tenn. Sept. 20, 2023) ............................ 41

*Hebrew v. Texas Dep't of Crim. Just.*, 80 F.4th 717 (5th Cir. 2023)..................... 20

*Johnson v. Univ. of Cincinnati*, 215 F.3d 561 (6th Cir. 2000) .............................. 44

*Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783
   (6th Cir. 2006)................................................................................. 48

*King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551
   (6th Cir. 2022)................................................................................. 30

*MacDonald v. Oregon Health & Science Univ.*,
   No. 3:22-cv-01942-IM, 2024 WL 3316199 (D. Or. July 5, 2024)......... 31, 32, 33

*Malone v. Legacy Health*, No. 3:22-CV-01343-HZ,
   2024 WL 3316167 (D. Or. July 5, 2024)......................................... 39

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*,
   475 U.S. 574 (1986)........................................................................ 15

*Mickey v. Zeidler Tool & Die Co.*, 516 F.3d 516 (6th Cir. 2008) .......................... 44

*Mois v. Wynn Las Vegas LLC*, 715 F. App'x 600 (9th Cir. 2017) .......................... 26

*Rhoades v. Standard Parking Corp.*, 559 F. App'x 500 (6th Cir. 2014) ............... 48

*Scafidi v. B. Braun Med., Inc.*, 713 F. Supp. 3d 1231 (M.D. Fla. 2024) ............... 40

*SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, 65 F.4th 830
    (6th Cir. 2023) ......................................................................................... 15

*Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555 (6th Cir. 2004) .................... 45

*Smith v. Pyro Min. Co.*, 827 F.2d 1081 (6th Cir. 1987) ...................... 21, 23, 24, 29

*Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024 (W.D. Wash. 2015) .................... 26

*Taylor v. Geithner*, 703 F.3d 328 (6th Cir. 2013) ............................................. 44, 45

*Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248 (1981) ................................ 45

*Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481 (10th Cir. 1989) ................................ 30

*Tooley v. Martin-Marietta Corp.*, 648 F.2d 1239 (9th Cir. 1981) .................... 29, 30

*Upshaw v. Ford Motor Co.*, 576 F.3d 576 (6th Cir. 2009) ............................... 44, 45

*White v. Baxter Healthcare Corp.*, 533 F.3d 381 (6th Cir. 2008) .......................... 46

*Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099
    (W.D. Wash. 2023) ............................................................................. 25, 26

STATUTES:

28 U.S.C. § 1291 ............................................................................................... 2

28 U.S.C. § 1331 ............................................................................................... 2

28 U.S.C. § 1343 ............................................................................................... 2

42 U.S.C. § 2000e, *et seq.* ............................................................. 10, 16, 17, 18, 20

42 U.S.C. § 12112(b)(5)(A) ........................................................................20

RULES:

FED. R. APP. P. 32(a)(7)(B) ........................................................................50

Fed. R. App. P. 32(f) ..................................................................................50

Fed. R. Civ. P. 56(c)(2) ..............................................................................15

REGULATIONS:

29 C.F.R. § 1605.2(c)(1) .............................................................................21

## STATEMENT REGARDING ORAL ARGUMENT

The central issue in this appeal is whether the evidence creates a genuine issue of material fact for a jury to decide, or whether the evidence is truly so one-sided as to entitle Appellee to judgment as a matter of law. Further questions presented are whether the district court applied the proper standards in analyzing Ms. Henry's Title VII claims and the legal burdens thereunder, whether other factual issues such as the parameters of Ms. Henry's beliefs and SOMC's claim of undue hardship were properly considered by the district court, and whether Ms. Henry's Affidavit was properly disregarded. Due to the importance of these questions, Ms. Henry requests oral argument and submits that argument will aid the decisional process.

## JURISDICTIONAL STATEMENT

The district court had jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C.

§1343. It entered an order granting Defendant's Motion for Summary Judgment on

September 9, 2024. Opinion and Order, R. 32, 33. Plaintiff appealed that order on

October 3, 2024. Notice of Appeal, R. 36. This Court has jurisdiction over this

appeal under 28 U.S.C. § 1291.

## ISSUES PRESENTED

1. Whether based on the record evidence a genuine issue of material fact exists as to whether SOMC showed undue hardship would result from accommodating Ms. Henry.

2. Whether a jury could find SOMC's proffered reasons for denying Ms. Henry's accommodation requests were pretextual.

## STATEMENT OF THE CASE

**I.    Ms. Henry's history with SOMC and her experience with SOMC's accommodation process.**

Ms. Henry worked as a Licensed Practical Nurse for SOMC from March 3, 2020, through September 17, 2021. Henry Aff., R. 25-1, at ¶ 2, Page ID # 633. In August of 2021, Ms. Henry was notified that SOMC would require Covid-19 vaccination or require regular tests for employees that received exemptions from vaccination. Id., at ¶ 3.

SOMC developed a one size fits all accommodation scheme for its vaccine mandate. See FAQ, R. 21-14, at Noel Aff., Ex. A, Page ID # 600. People who requested and were granted religious accommodation would have to take regular nasopharyngeal tests. Id. Oral pharyngeal tests would be offered only to people with a physician-validated medical reason to avoid nasopharyngeal tests. Id.

Ms. Henry was the only employee to request testing accommodation, and of the approximately 300 employees who requested religious accommodation to any of SOMC's Covid protocols, Ms. Henry was the only employee SOMC denied. Blankenship Dep., R. 21-11, at pp. 9-10, Page ID # 485-86. Vaccinated SOMC employees did not have to test regularly, even though they could still spread Covid-19. Id., at pp. 35, 45, Page ID # 511, 521.

On September 3, 2021, Ms. Henry informed SOMC that her sincerely held Christian beliefs prevented her from receiving the Covid-19 vaccination and from

4

testing, stating "The body is the temple of the Holy Spirit and as such, should not be used for medical treatments that are unnecessary, and abhorrent. Substances in the test and the vaccine are possibly harmful to the human body, and we are called to protect the body and not participate in pharmakaia." Henry Aff., R. 25-1, at ¶ 4, Page ID # 633; Blankenship Aff., R. 21-3, at Ex. B, Page ID # 263. Ms. Henry's requested further stated, "My sincerely-held Christian beliefs DO NOT ALLOW ME to: … be assaulted by a foreign body being inserted into my nasal passages (i.e., covid test) as my body is a temple of the Holy Spirit and is to remain pure." Id (emphasis in original). Ms. Henry understood testing swabs contain harmful substances, and that inserting the swab so far into the nasal passage could break the blood-brain barrier and cause harm to her body. Henry Aff., R. 25-1, at ¶ 4, Page ID # 633. Risking that harm in the name of pharmakaia goes against Ms. Henry's sincerely held Christian beliefs. Id. Within her written request Ms. Henry offered to self-screen as reasonable accommodation and to stay home if she felt sick. Blankenship Aff., R. 21-3, at Ex. B, Page ID # 264.

Ms. Henry also stated a religious objection to wearing a mask, but later determined masking was acceptable at work for several reasons. Henry Aff., R. 25-1, at ¶ 5, Page ID # 633.

On September 8, 2021, Teresa Bryan called Ms. Henry about her accommodation request and asked Ms. Henry questions to present to SOMC's

Ethics Committee. Henry Aff., R.25-1, at ¶ 6, Page ID # 633. Ms. Henry asked to receive and answer Ms. Bryan's questions in writing so she could better prepare, think and pray, and respond to those questions thoroughly. Id. Ms. Henry's request was refused. Id. During this confrontational call Ms. Bryan challenged Ms. Henry's religious beliefs and tried to cause Ms. Henry to contradict herself. Id. Ms. Bryan specified that this call was only for the Ethics Committee to study the situation, and that the Ethics Committee is not involved in determining whether to accept or reject a religious accommodation request. Bryan Dep., R. 21-12, at p. 20, Page ID # 546. Still, Ms. Bryan testified that she thought Ms. Henry's "request was very sincere." Id., at p. 40, Page ID #566.

After the call with Teresa Bryan, Ms. Henry was told SOMC exempted her from Covid-19 vaccination according to the beliefs she stated about both vaccination and testing, on condition she test, but that SOMC would not honor her accommodation request regarding weekly Covid-19 testing. Noel Dep., R. 21-2, at p. 49, Page ID # 237; Henry Aff., R. 25-1, at ¶ 7, Page ID # 634. Ms. Henry was told the sample collection method for the testing would be nasopharyngeal. Id.

On September 14, 2021, Ms. Henry had a brief 10-minute call with Kendall Applegate and Sarah Blankenship regarding her accommodation request. Henry Aff., R. 25-1, at ¶ 8, Page ID # 634. This call was SOMC Human Resources' only verbal follow-up to Ms. Henry's written accommodation request. Applegate Dep.,

R. 21-5, at p. 43, Page ID # 420. Trying to reach a reasonable resolution during this call, Ms. Henry asked if she could take a different type of test. Henry Dep., R. 21-4, at pp. 52-53, Page ID # 325-36; Henry Aff., R. 25-1, ¶ 8, Page ID # 634. Mr. Applegate told Ms. Henry that she could not. Id. Ms. Henry felt the purpose of this call was to threaten and coerce her to submit to weekly nasopharyngeal testing since neither Applegate nor Blankenship seemed willing to discuss the details of her accommodation request. Id. Mr. Applegate tried to scare Ms. Henry into compliance by telling her things such as COBRA insurance is not cheap. Id.; Henry Dep., R. 21-4, at pp. 51-52, Page ID # 324-25. Neither Ms. Blankenship nor Mr. Applegate discussed the sincerity of Ms. Henry's religious beliefs during the call. Blankenship Dep., R. 21-11, at pp. 32-35, Page ID # 508-511. Mr. Applegate did not discuss alternative accommodations with Ms. Henry. Applegate Dep., R. 21-5, at pp. 19-22, Page ID # 396-99.

Ms. Blankenship did not ask whether oropharyngeal testing would violate Ms. Henry's religious beliefs, though Ms. Blankenship knew oropharyngeal tests were offered to people who for medical reasons could not take the nasopharyngeal test. Blankenship Dep., R. 21-11, at p. 29, Page ID # 505. Mr. Applegate and Ms. Blankenship deny Ms. Henry inquired about taking a different test. Blankenship Aff., R. 21-3, at ¶ 46, Page ID # 258; Applegate Aff., R. 21-7, at ¶ 26, Page ID # 434. Applegate and Blankenship testified by affidavit that had Ms. Henry inquired

7

about alternative testing they would have researched and asked whether a different test could be offered. Id., at ¶ 27; Blankenship Aff., R. 21-3, at ¶ 52, Page ID # 258. They did not attempt to accommodate Ms. Henry.

Like Ms. Bryan, however, Mr. Applegate confirmed that he believed Ms. Henry's professed beliefs were sincere. Applegate Dep., R. 21-5, at p. 18, Page ID # 395. Ms. Blankenship similarly confirmed that she did not challenge, nor have reason to challenge, the religious basis of Ms. Henry's request. Blankenship Dep., R. 21-11, at p. 25, Page ID # 501.

While Ms. Henry would have preferred a saliva test, Ms. Henry would have agreed to do a different test such as the oropharyngeal, or "throat swab" test as these tests would not break the blood-brain barrier. Henry Aff., R. 25-1, ¶ 9, Page ID # 634. Id. Similarly, Ms. Henry would have also accepted the "anterior nares" test because the swab is not pushed as far into the nasal passage. Id. SOMC never offered these alternative tests to Ms. Henry. Id.

SOMC was able to validate oropharyngeal and anterior nares tests in house since it adopted in-house validation. Cassity Dep., R. 25-2, at pp. 18-19, Page ID # 653-54. Ms. Blankenship confirmed SOMC provided oropharyngeal tests to some employees. Blankenship Dep., R. 21-11, at pp. 16, 19, 20, Page ID # 492, 495-96. Ms. Blankenship further agreed that any risk of spreading Covid-19 would still be mitigated if Ms. Henry took a different type of test. Id., at p. 36, Page ID # 512.

8

Further, SOMC could have permitted Ms. Henry to take a saliva test, which would have, according to one SOMC employee, required a 48-hour turnaround time as compared to SOMC's in-house validation which took 24 hours. Profitt Aff., Doc 21-9, at ¶¶ 3-4, 8, Page ID # 458-59; Blankenship Aff., R. 21-3, at ¶¶ 11-13, Page ID # 253-54. Prior to validating tests in-house, SOMC sent all tests off-site which required a three to seven day turnaround time to get results. Id.

Within her initial written request for accommodation Ms. Henry stated, "Title VII of the U.S. Civil Rights Act prohibits religious discrimination," "religious-based discrimination is against the law," and "Retaliation is against the law." Blankenship Aff., R. 21-3, at Ex. B, Page ID # 265-66. In a letter dated September 14, 2021, sent by Ms. Henry after her conversation with Mr. Applegate and under the belief that the only test available to her was the nasopharyngeal test, Ms. Henry stated, "This requirement to be fully vaccinated for Covid-19 and submit to Covid testing is something I cannot participate in because doing so would **harm my soul**." Blankenship Aff., R. 21-3, at Ex. C, Page ID # 273 (emphasis in original). In this letter, Ms. Henry again invoked Title VII and stated SOMC's denial of her accommodation is "religious-based discrimination." Id. On September 17, 2021, Ms. Henry was told she would be labeled a noncompliant employee, taken off the schedule, and put on unpaid leave if she did not agree to

9

testing. Henry Aff., R. 25-1, at ¶ 11, Page ID # 634. Two weeks elapsed between Ms. Henry's accommodation request and being placed on unpaid leave.

Ms. Henry believed her willingness to work with SOMC on masking would cause SOMC to work with her on the testing, but she was met with inflexibility regarding SOMC's demand she take weekly nasopharyngeal tests. Henry Aff., R. 25-1, at ¶ 10, Page ID # 634. Mr. Applegate's statement that Ms. Henry could not take a different type of test caused her not to inquire further, and she was taken off payroll 3 days after that conversation. Id.

## II.    Ms. Henry sues and appeals.

Ms. Henry filed the Complaint in this case on November 17, 2022, asserting religious accommodation and retaliation claims under the Civil Rights Act of 1964, § 701, *et seq*., 42 U.S.C. § 2000e, *et seq*. ("Title VII"), and claims under the Americans with Disabilities Act ("ADA"). Complaint, R. 1. Ms. Henry voluntarily dismissed her ADA claims before summary judgment. Joint Stipulation of Dismissal, R. 23; Order Granting Dismissal, R. 24. SOMC answered the Complaint on January 20, 2023. Answer, R. 7. SOMC moved for summary judgment on February 15, 2024. SOMC MSJ, R. 21.

Before summary judgment, Ms. Henry and SOMC moved to strike each other's designated expert witnesses. Plaintiff objected to several of Defendant's claims within the "Factual and Procedural Background" section of its briefing as

improper attempts to bias the district court's opinion before summary judgment. Henry Memo in Support, R. 15-1, at p. 2, Page ID # 112. SOMC repeatedly tried to bias the district court's understanding of Ms. Henry's request for accommodation, for example, by asserting "Plaintiff requested a religious exemption […] from *any type* of Covid-19 testing. Plaintiff informed Defendant that she was opposed to *all* testing as it went against her sincerely held religious beliefs." SOMC Memo, R. 13-1, pp. 1-2, Page ID # 56-57. (emphasis added). Ms. Henry's written accommodation request, however, states her beliefs do not allow her to "[…] be assaulted by a foreign body being inserted into my nasal passages […]." Def. Ex. 4, R. 13-5, Page ID # 86. Despite Ms. Henry's attempts to warn the district court of the factual dispute, the district court found in its Order granting summary judgment in SOMC's favor that Ms. Henry objected to all testing "no matter the type." Opinion, R. 32, at p. 13, Page ID # 726.

Ms. Henry testified in deposition that during her phone call with Mr. Applegate and Ms. Blankenship she asked whether she could take a different type of test and was told she could not. Henry Dep., R. 21-4, at pp. 52-53, Page ID # 325-26. Ms. Henry was then asked whether she recommended different forms of testing during this call, to which she answered she could not recall whether she did or did not. Id. The district court found that Ms. Henry later contradicted this statement through her summary judgment affidavit by stating that she asked

11

generally whether she could take a different type of test. Henry Aff., R. 25-1, at ¶ 8, Page ID # 634; Opinion, R. 32, pp. 10-12, Page ID # 723-25. On this incorrect finding, the district court disregarded Ms. Henry's affidavit claiming it was an attempt to create a sham issue of fact. Id.

Ms. Henry was never asked by SOMC during the phone call or in deposition to explain her beliefs or how they apply to testing. Thus, Ms. Henry was free to explain via affidavit why nasopharyngeal testing would violate her beliefs and why other tests would be acceptable. Henry Aff., R. 25-1, ¶¶ 4, 9, Page ID # 633-34.

The district court granted SOMC's motion for summary judgment on September 9, 2024. The court found accommodating Ms. Henry would cause undue hardship for SOMC by (1) allowing her to work without vaccination, (2) exempting her from testing, on the court's finding she objected to all testing, and (3) providing saliva tests requiring a 48-hour waiting period for results. Opinion, R. 32. The district court further found SOMC's reason for denying Ms. Henry's accommodation request was due to "concern about the spread of the COVID-19 virus" and was not pretextual, granting summary judgment in SOMC's favor on Ms. Henry's retaliation claim. Id. The district court did not discuss whether offering Ms. Henry the available oropharyngeal or anterior nares tests would have caused undue hardship for SOMC.

This appeal followed.

12

## SUMMARY OF ARGUMENT

The district court erred in granting summary judgment to SOMC on Ms. Henry's failure-to-accommodate and retaliation claims. Regarding the failure-to-accommodate claim, SOMC failed to meet its burden under Title VII to show that accommodating Ms. Henry would result in substantial increased costs to its particular business. The district court improperly resolved several key factual disputes in SOMC's favor which should have gone to the jury. Regarding undue hardship, SOMC had readily available alternatives to nasopharyngeal testing, including oropharyngeal and anterior nares tests that could be validated on-site, yet SOMC never explored these options internally or with Ms. Henry. Further, there was insufficient proof for summary judgment to determine that sending a saliva test offsite, which could require a 48-hour turnaround time, would cause undue hardship for SOMC, let alone "compromise[] SOMC's mission to 'serve the community and keep it safe.'" Opinion, R. 32, p. 16, Page ID # 729. This conclusion is opposed by the fact that Ms. Henry would be the only employee to require this accommodation, and that in the early stages of the pandemic SOMC was sending all of its tests offsite requiring a three to seven day turnaround for results. The district court also improperly found Ms. Henry objected to all forms of COVID-19 testing, when the record shows she specifically objected to nasopharyngeal testing.

13

The district court erred as a matter of law by insinuating that it is the employee's obligation under Title VII to request a particular accommodation rather than the employer's duty to attempt accommodation, which requires that the employer search for an acceptable accommodation. SOMC did not. On this issue the court wrongly discredited Ms. Henry's affidavit as an attempt to create a sham issue of fact, when her affidavit harmonized with and supplemented her earlier deposition testimony about asking for alternative testing methods. Regardless, SOMC's duty to accommodate is triggered by Ms. Henry's request for religious accommodation, not her suggestion of a particular accommodation, and requires that SOMC try to accommodate. SOMC failed this obligation.

Regarding Ms. Henry's retaliation claim, the district court mischaracterized her September 14, 2021 letter as "preemptive" oppositional activity though it was sent after her call with Applegate and Blankenship where she was told she could not take a different test. The court also failed to properly analyze pretext, ignoring evidence that SOMC's stated concern about COVID-19 spread may not have actually motivated its decision, since SOMC granted every other employee's accommodation request.

Since genuine disputes of material fact remain regarding undue hardship and pretext, and since the district court erred in applying the law, summary judgment was not warranted, and the district court should be reversed.

14

## ARGUMENT

### I.    Standard of Review.

This Court reviews a grant of summary judgment *de novo*. *SHH Holdings, LLC v. Allied World Specialty Ins. Co.*, 65 F.4th 830, 836 (6th Cir. 2023), citing *Colvin v. Caruso*, 605 F.3d 282, 288 (6th Cir. 2010). Summary judgment is appropriate only when "no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law." *Id.* (citing Fed. R. Civ. P. 56(c)(2)). At this stage, "the district court must draw all reasonable inferences in favor of the nonmoving party." *Id.* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986)). Summary judgment is not proper where there is "sufficient evidence supporting a factual dispute" so the factfinder must "resolve the parties' differing versions of the truth at trial." *Gibson v. Foltz*, 963 F.2d 851, 853 (6th Cir. 1992) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986)). Summary judgment must be denied "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson*, 477 U.S. at 248, 106 S.Ct. 2505. "Credibility determinations, the weighing of the evidence, and the drawing of legitimate inferences from the facts are jury functions, not those of a judge ...." *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. The evidence of the non-movant is to be believed, and all justifiable inferences are to

be drawn in her favor. *Id.* The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law. *Id.* at 251–52, 106 S.Ct. 2505.

## II. Assignment of Error I: The District Court erred in granting summary judgment in SOMC's favor on Ms. Henry's failure-to-accommodate claim.

### A. Ms. Henry satisfies the *prima facie* case for her failure-to-accommodate claim.

While there are conspicuously different interpretations of the boundaries of Ms. Henry's religious objection, there was no suggestion from the district court that Ms. Henry did not satisfy the *prima facie* elements of her failure to accommodate claim. To the extent this Court considers Ms. Henry's *prima facie* case, however, and for brevity, Ms. Henry herein incorporates her arguments at the district court as if fully restated herein. Henry Opposition, R. 25, pp. 9-17, Page ID # 621-29, incorporated herein.

### B. Proving the fact issue of undue hardship under Title VII; issues of fact are generally reserved to the jury.

Under 42 U.S.C. § 2000e(j), "The term 'religion' includes all aspects of religious observance and practice, as well as belief, unless an employer demonstrates that he is unable to reasonably accommodate to an employee's or prospective employee's religious observance or practice without undue hardship on

16

the conduct of the employer's business." Under 42 U.S.C. § 2000e(m), "The term 'demonstrates' means meets the burdens of production and persuasion."

"Once a prima facie case is established, the burden shifts to the employer to show that it could not reasonably accommodate the employee without undue hardship in the conduct of its business. […] Because it is a relative term, 'reasonableness' must be determined on a case-by-case basis." *E.E.O.C. v. Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991) (internal citations omitted). See also *E.E.O.C. v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir. 2006) (finding, "The reasonableness of an employer's attempt at accommodation must be determined on a case-by-case basis and is generally a question of fact for the jury, rather than a question of law for the court.") (internal citations omitted).

In *Groff v. DeJoy*, 600 U.S. 447 (2023), the Supreme Court clarified that proving undue hardship under "Title VII requires an employer that denies a religious accommodation to **show** that the burden of granting an accommodation **would** result in substantial increased costs in relation to the conduct of its particular business." *Id*., at Syllabus (emphasis added) (clarifying that "showing 'more than a *de minimis* cost' […] does not suffice to establish 'undue hardship' under Title VII."). Whether a religious accommodation would pose an undue hardship on an employer is a "fact-specific inquiry." *Id*., at 468. A burden becomes undue hardship when it "is substantial in the overall context of an employer's

17

business." *Id.*, at 470. It "must be more severe than a mere burden." *Id.*, at 469. The "employer must show that the burden of granting an accommodation would result in substantial increased costs in relation to the conduct of its particular business." *Id.*, at 470.

### C. SOMC would suffer no hardship by letting Ms. Henry take either the oropharyngeal or anterior nares test as SOMC was equipped to validate both tests on site and administered the oropharyngeal test to certain employees.

Under 42 U.S.C. § 2000e(j) and (m), and *Groff*, supra, SOMC has the burden of production and persuasion to show that accommodating Ms. Henry would result in substantial increased costs in relation to the conduct of its particular business. See *Groff v. DeJoy*, 600 U.S. 447 (2023), at syllabus. On summary judgment, "The ultimate question is whether the evidence presents a sufficient factual disagreement to require submission of the case to the jury, or whether the evidence is so one-sided that the moving parties should prevail as a matter of law." *Anderson*, 477 U.S. at 251–52, 106 S.Ct. 2505.

It is undisputed that SOMC would not incur undue hardship by offering Ms. Henry the oropharyngeal test or anterior nares tests. SOMC had the capability to validate both tests onsite. Cassity Dep., R. 25-2, at pp. 18-19, Page ID # 653-54. SOMC even provided some employees with oropharyngeal tests. Blankenship Dep., R. 21-11, at pp. 16, 19, 20, Page ID # 492, 495-96. If it was not an undue hardship for SOMC to give other employees an oropharyngeal test, it cannot be

18

argued that somehow it would be undue hardship to give Ms. Henry the same test. SOMC, however, offered no alternative test to Ms. Henry nor did it identify alternative tests as possible accommodation internally or with Ms. Henry. The district court did not analyze undue hardship as it relates to SOMC's ability to offer Ms. Henry these alternative testing methods. The evidence, however, shows that SOMC would suffer no hardship, let alone undue hardship, in offering Ms. Henry one of the other tests SOMC could validate.

For these reasons the district court erred in granting summary judgment to SOMC, the decision should be overturned, and this case should be remanded for further proceedings.

### D. It is the employer's burden to accommodate the employee; the employer has an obligation to attempt accommodation. SOMC did not attempt to accommodate Ms. Henry's testing objection.

"Title VII requires that an employer reasonably accommodate an employee's practice of religion, not merely that it assess the reasonableness of a particular possible accommodation or accommodations." *Groff v. DeJoy*, 600 U.S. 447, 473, 143 S. Ct. 2279, 2296–97, 216 L. Ed. 2d 1041 (2023). "This distinction matters. Faced with an accommodation request like Groff's, it would not be enough for an employer to conclude that forcing other employees to work overtime would constitute an undue hardship. Consideration of other options, such as voluntary shift swapping, would also be necessary." *Id*. If a requested accommodation poses

an undue hardship, the employer must *sua sponte* consider other possible accommodations. *Hebrew v. Texas Dep't of Crim. Just.*, 80 F.4th 717, 722 (5th Cir. 2023), citing *Groff*, at 2297. Only after thorough consideration of other options may the employer deny the employee's request for accommodation. *Hebrew*, supra, citing, *Adeyeye v. Heartland Sweeteners*, LLC, 721 F.3d 444, 455 (7th Cir. 2013) ("On this issue, [the employer] bears the burden of proof, so it must show, as a matter of law, that any and all accommodations would have imposed an undue hardship.") (cited in *Groff*, 143 S. Ct. at 2296).

Whether SOMC reasonably tried to accommodate Ms. Henry is a question for the jury. See *E.E.O.C. v. Robert Bosch Corp.*, 169 F. App'x 942, 944 (6th Cir. 2006). As further observed in *Robert Bosch Corp.*, it is improper to "put the question of accommodation on the shoulders of the [employee]." *Id*., at 946. Unlike the Americans with Disabilities Act, which places the initial burden on the plaintiff to propose an accommodation and demonstrate the proposed accommodation is reasonable, Title VII puts the burden on the employer to "demonstrate[ ] that he is unable to reasonably accommodate to an employee's religious observance or practice without undue hardship on the conduct of the employer's business." *E.E.O.C. v. Texas Hydraulics, Inc.*, 583 F. Supp. 2d 904, 909 (E.D. Tenn. 2008), citing 42 U.S.C. § 12112(b)(5)(A), 42 U.S.C. § 2000e(j),

20

29 C.F.R. § 1605.2(c)(1) (after employee has notified employer of religious conflict, employer has duty to accommodate).

"[T]he Court must first determine what actions, if any, the employer took to accommodate the employee's religious beliefs. It must then determine whether such actions, or any actions suggested by the plaintiff, would constitute undue hardship." *Texas Hydraulics*, supra, citing *Boomsma v. Greyhound Food Management, Inc.*, 639 F.Supp. 1448, 1453 (W.D.Mich.1986). Both the reasonableness of an offered accommodation, and the amount of effort that an employer put into determining whether a reasonable accommodation was possible, are relevant to whether the defendant has sustained its burden on summary judgment. *Texas Hydraulics*, supra, citing *Smith v. Pyro Mining Co.*, 827 F.2d 1081, 1088 (6th Cir.1987).

This Court has long held true to the principle that the employer must attempt accommodation and explore alternatives in case of conflict. In *E.E.O.C. v. Arlington Transit Mix, Inc.*, 957 F.2d 219 (6th Cir. 1991), the Court stated:

> The new scheduling policy was implemented on June 25, 1987. There is no evidence that, between that date and Taylor's dismissal, Arlington made any effort to find a way to avoid the collision. Mechanic Dana Justice testified that he would have exchanged shifts had he been asked to do so. Abraham acknowledged that he never told Taylor he could switch shifts with Justice if the latter were willing, nor did he discuss the matter with Justice. At a minimum, Arlington had an obligation to explore a voluntary waiver of seniority rights before terminating Taylor. After failing to pursue this or any other reasonable accommodation, the company is in no position to argue

21

that it was unable to accommodate reasonably his religious needs
without undue hardship on the conduct of its business.
*Id*., at 222.

Here, SOMC developed a "one size fits all" accommodation scheme for its
vaccine mandate. See FAQ, R. 21-14, at Noel Aff., Ex. A, Page ID # 600. People
who requested and were granted religious accommodation would have to take
regular nasopharyngeal tests. Id. Oral pharyngeal tests were supposedly provided
only to people who had a medical reason to avoid nasopharyngeal tests. Id. Ms.
Henry was the only employee to request religious accommodation from
nasopharyngeal testing. Blankenship Dep., R. 21-11, at pp. 9-10, Page ID # 485-
86. In contravention of Title VII, as recognized in *Groff*, SOMC explored no
alternative to nasopharyngeal testing but merely assessed the reasonableness of a
particular possible accommodation, i.e., Ms. Henry's offer to self-screen.
Applegate Aff., R. 21-7, at ¶ 27, Page ID # 434; Blankenship Aff., R. 21-3, at ¶ 52,
Page ID # 258; Applegate Dep., R. 21-5, at pp. 19-22, Page ID # 396-99. The
record shows SOMC declined Ms. Henry's suggested accommodation and
conducted no analysis or inquiry into potential alternatives. Id. By failing to pursue
other options for Ms. Henry, SOMC failed to engage in what Title VII demands, as
recognized in *Groff and Arlington Transit Mix, Inc*.

More troubling, the reason Mr. Applegate and Ms. Blankenship did not
inquire about alternative testing with Ms. Henry or with other SOMC personnel

22

was Ms. Henry's alleged failure to ask about alternative tests. Applegate Aff., R. 21-7, at ¶ 27, Page ID # 434; Blankenship Aff., R. 21-3, at ¶ 52, Page ID # 258. As precedent establishes, an employer cannot argue inability to reasonably accommodate an employee's religious beliefs when it has not tried to pursue any alternative. To start, as stated in *Pyro Mining*, discussed *infra*, accommodations that also violate religious beliefs are not accommodations, and alternatives must be sought. See *Smith v. Pyro Mining*, 827 F.2d 1081, 1088 (6th Cir.1987). Under *Arlington Transit Mix, Inc.*, 957 F.2d 219, 222 (6th Cir. 1991), SOMC had to explore alternatives before terminating Ms. Henry. Under *Groff*, SOMC is required to at least *consider* other options. See *Groff v. DeJoy*, 600 U.S. 447, 473, 143 S. Ct. 2279, 2296–97, 216 L. Ed. 2d 1041 (2023). Yet, alternative testing was not inquired into by Mr. Applegate or Ms. Blankenship with Ms. Henry or with other SOMC personnel. Ms. Blankenship knew SOMC had other tests available. Blankenship Dep., R. 21-11, at p. 29, Page ID # 505. SOMC provides nothing to suggest it was relieved of its burden to seek alternatives. SOMC cannot bury its head in the sand and avoid making basic inquiries of an employee needing accommodation. Nor can SOMC properly assert its failure to explore alternative accommodations was the fault of employee's failure to recommend an acceptable alternative. This misconstrues the employer's burden under Title VII. Like the employer in *Arlington Transit Mix, Inc.*, supra, SOMC never suggested or explored

any accommodation to Ms. Henry's testing objection. Likewise, SOMC failed to meet its legal obligations under Title VII.

SOMC failed to fulfill its duties under Title VII and cannot meet its burden to establish undue hardship as a matter of law. The district court erred by finding otherwise and agreeing that it was Ms. Henry's burden to suggest an accommodation acceptable to SOMC.

### E. SOMC did not accommodate Ms. Henry.

SOMC may argue that it accommodated Ms. Henry by offering her an exemption from vaccination on condition she submit to weekly testing. SOMC may argue that Ms. Henry asked for an "accommodation to an accommodation." This Court has held, however, that a purported accommodation that also violates an employee's religious belief is no accommodation.

In *Smith v. Pyro Min. Co.*, 827 F.2d 1081 (6th Cir. 1987), an employee asked for a religious accommodation from working on Sundays. The employer claimed to "accommodate" the employee by telling him he could take Sundays off if he could find another person to work for him on Sundays, but the employee also thought it a sin to ask another person to work for him on a Sunday. The Court stated, "Since the accommodation proposed originally by Pyro was not reasonable, Pyro was obligated to make further attempts at accommodating Smith, unless such attempts would pose an undue hardship." *Id.*, at 1088. SOMC may claim to have

accommodated Ms. Henry by exempting her from vaccination on condition that she submit to nasopharyngeal testing – another practice that violated her religious beliefs. Substitution of one religiously objectionable requirement for another does not fulfill SOMC's obligations under Title VII, as explained in *Smith*, supra. Since SOMC made no further attempt to accommodate Ms. Henry, and since options were available to SOMC that would not have posed an undue hardship, SOMC failed to fulfill its obligations to accommodate Ms. Henry under Title VII.

Any argument that SOMC accommodated Ms. Henry by offering her the nasopharyngeal test is against the weight of authority from this Court.

Further, SOMC may argue under *Ansonia Bd. of Educ. v. Philbrook*, 479 U.S. 60, 107 S. Ct. 367, 93 L. Ed. 2d 305 (1986), that Ms. Henry was accommodated with an indefinite unpaid leave of absence, but this is unavailing. *Ansonia* was helpfully distinguished in *Zimmerman v. PeaceHealth*, 701 F. Supp. 3d 1099 (W.D. Wash. 2023). In *Zimmerman*, plaintiffs alleged the employer could have reasonably accommodated their religious practices by transferring them to other positions or by allowing them to use additional protective equipment and other measures. *Id*., at 1110. The employer argued that unpaid leave was an accommodation rather than an adverse employment action, but the court, in refusing the employer's motion to dismiss, discussed:

> The employment consequences of Plaintiffs' adherence to religious
> practices are substantially greater and materially different than the

25

consequences of taking three days of unpaid leave in *Ansonia*.
Although the Supreme Court has declined to incorporate all case law
interpreting the Americans with Disabilities Act into the analysis of
religious accommodations under Title VII, *see Groff*, 600 U.S. at 471,
143 S.Ct. 2279, it is often instructive, and both this district and the
Ninth Circuit have observed that "[t]he fact that unpaid leave may, in
certain circumstances and where requested, constitute a reasonable
accommodation does not mean that it cannot also be an adverse
action, particularly where the employee is placed on unpaid leave
involuntarily." *Steenmeyer v. Boeing Co.*, 92 F. Supp. 3d 1024, 1031
(W.D. Wash. 2015); *see also Dawson v. Akal Sec. Inc.*, 660 F. App'x
504, 506 (9th Cir. 2016) (unpublished) (holding that involuntary
unpaid leave may be an adverse employment action) (citing
*Steenmeyer*, 92 F. Supp. 3d at 1031).

Further, Plaintiffs allege that PeaceHealth could have reasonably
accommodated their religious practices by transferring them to other
positions or allowing them to use additional protective equipment and
other measures. Although Title VII "directs that any reasonable
accommodation by the employer is sufficient to meet its
accommodation obligation," *Ansonia*, 479 U.S. at 68, 107 S.Ct. 367,
the availability of options that would allow the employee to keep
working may affect the reasonableness of an option that would not.
*See Mois v. Wynn Las Vegas LLC*, 715 F. App'x 600, 601 (9th Cir.
2017) (unpublished) (holding that unpaid leave was not a reasonable
accommodation under ADA where light duty work was an option).
*Id.*, at 1110.

Here, SOMC's offer of indefinite unpaid leave was adverse employment action

rather than reasonable accommodation. Under the reasoning of *Zimmerman* and

*Mois*, supra, however, that SOMC could have offered Ms. Henry alternative forms

of testing, which would have allowed her to keep her job, affect the reasonableness

of the option that would not, i.e., indefinite unpaid leave. Summarily, any

argument from SOMC that indefinite unpaid leave was a reasonable

accommodation rather than an adverse employment action should not be well taken given the alternative accommodation options available to SOMC.

For these reasons, SOMC did not accommodate Ms. Henry.

### F.  The district court improperly found Ms. Henry's objection was to all testing regardless of the type.

The district court made a factual error, and a legal error in deciding a disputed fact for the moving party, when it found "Henry's request for an accommodation to be exempt from *both* vaccination *and* testing, **no matter the type**, poses an obvious threat to her coworkers and to SOMC's vulnerable-by-definition patient population." Opinion, R. 32, Page ID # 726 (emphasis added).

The record evidence contradicts the district court's finding. To start, Ms. Henry's initial written request states her beliefs do not allow her to be assaulted by a foreign body inserted into her nasal passages. Blankenship Aff., Ex. B, R. 21-3 at Page ID # 263. Ms. Henry later clarified this is due to the potential that the swab, shoved so far into the nasal passage for the nasopharyngeal test, breaks the blood-brain barrier and causes harm. Henry Aff., Ex. 1, ¶ 4. Further, when Ms. Henry stated in deposition that she asked whether she could take a less invasive test, by implication she again confirmed she would have taken a less invasive test. Henry Dep., R. 21-4, at p. 53, Page ID # 326. Notwithstanding the district court's error in disregarding Ms. Henry's Affidavit, discussed below, her deposition testimony establishes she did not object to all testing.

27

The district court discusses Ms. Henry's September 14, 2021 letter wherein Ms. Henry states testing would harm her soul, but this letter was sent after her conversation with Applegate and Blankenship. Opinion, R. 32, Page ID # 723. Read in context with Ms. Henry's recollection of the phone call wherein she asked whether she could take a different test and was told she could not, her assertion that testing would harm her soul harmonizes with her understanding at the time of writing the letter that the only test offered to her was the nasopharyngeal test. That is, Ms. Henry states that being forced to take the one test she was told she had to take would harm her soul. The district court apparently found this means Ms. Henry would have refused to take any other test. This contradicts Ms. Henry's deposition testimony and even the district court's later findings, as discussed below.

The district court further contradicts its finding that Ms. Henry objected to all testing when it considered saliva testing and incorrectly concluded that type of testing would create an undue hardship, also addressed below. Opinion, R. 32, Page ID # 727-29. The district court assumed for the sake of argument that Ms. Henry *asked* about saliva testing, but from this it appears the district court also presumed Ms. Henry would have taken a saliva test, which is at odds with its finding that Ms. Henry's objection was to all testing.

It is troubling that the district court found Ms. Henry objected to all testing given Ms. Henry exposed SOMC's earlier attempt to bias the district court's view of the facts in briefing on expert witnesses. Henry Memo in Support, R. 15-1, at p. 2, Page ID # 112. Ms. Henry alerted the district court as early as December 23, 2023 that she did not object to all testing, and that she planned to argue on summary judgment she would have accepted other tests. Id. Thus, SOMC's allegation of an "eleventh-hour change in her theory of the case" is also false as it was on notice of Ms. Henry's intention to assert she would have done other tests well before summary judgment briefs were submitted. SOMC Reply, R. 26, p. 11, Page ID # 688.

In sum, the district court had little justification to find Ms. Henry's objection was to all testing, and its finding is contradicted by its later analysis accepting Ms. Henry would have taken a saliva test. The district court erred by misconstruing Ms. Henry's accommodation request in the face of contrary evidence.

### G. SOMC did not show that a 48-hour testing turnaround time would have caused SOMC undue hardship had it let Ms. Henry take a saliva test.

An employer must present evidence of undue hardship; it cannot rely on speculation. *Smith v. Pyro Min. Co.*, 827 F.2d 1081, 1086 (6th Cir. 1987), citing *Brown v. General Motors Corp.,* 601 F.2d 956, 961 (8th Cir.1979). See also *Tooley v. Martin–Marietta Corp.*, 648 F.2d 1239, 1243 (9th Cir.), cert. denied, 454 U.S.

1098, 102 S.Ct. 671, 70 L.Ed.2d 639 (1981) ("A claim of undue hardship cannot

be supported by merely conceivable or hypothetical hardships.... The magnitude as

well as the fact of hardship must be determined by examination of the facts of each

case."); *Toledo v. Nobel-Sysco, Inc.*, 892 F.2d 1481, 1492 (10th Cir. 1989) (citing

*Tooley* for the same proposition); *Anderson v. Gen. Dynamics Convair Aerospace

Div.*, 589 F.2d 397, 402 (9th Cir. 1978) (finding, "Undue hardship cannot be

proved by assumptions nor by opinions based on hypothetical facts."). *Brown v.

Polk Cnty., Iowa*, 61 F.3d 650, 655 (8th Cir. 1995) (collecting cases); *E.E.O.C. v.

Alamo Rent-A-Car LLC*, 432 F. Supp. 2d 1006, 1015 (D. Ariz. 2006) (holding

undue hardship based on speculation "is not a basis to establish a genuine issue of

material fact.").

In *Draper v. U.S. Pipe & Foundry Co.*, 527 F.2d 515 (6th Cir. 1975), this

Court stated, "The employer is on stronger ground when he has attempted various

methods of accommodation and can point to hardships that actually resulted." *Id.*,

at 520. Where various methods of accommodation have been attempted, and the

employer cannot point to any resulting hardship, then the employer's position is

infirm. In *King v. Steward Trumbull Mem'l Hosp., Inc.*, 30 F.4th 551 (6th Cir.

2022), this Court adhered to the reasoning in *Draper*, while not specifically citing

the case, in reversing a grant of summary judgment. In *King*, a hospital employee

sued for failure to accommodate under the ADA after she was dismissed following

a five-week medical leave. In determining the district court erred, this Court noted, "the record shows that the Hospital did not actually suffer any undue hardship because of [plaintiff's] five-week absence. The Hospital did not have any significant staffing disruptions, and [plaintiff's supervisor] does not remember having to pick up any of [plaintiff's] missed shifts." *Id.*, at 568-69. The Court further noted, "the Hospital has not shown that keeping [plaintiff's] job open while she applied for leave would have caused undue hardship." *Id.* Considering this, the Court held, "a jury could find that the Hospital did not meet its burden to show that granting [plaintiff] retroactive leave while keeping her job open would have caused undue hardship." *Id.*

It is apparent SOMC never tried to accommodate Ms. Henry with an off-site saliva test. It is difficult to conclude, then, from one affidavit paragraph that the alleged 48-hour turnaround time to validate off-site saliva tests "unmistakably compromises SOMC's mission to 'serve the community and keep it safe.'" Opinion, R. 32, p. 16, Page ID # 729, citing Profitt Aff., R. 21-9, at ¶ 8, Page ID # 459. Further, the sole case the district court cites in support, *MacDonald v. Oregon Health & Science Univ.*, No. 3:22-cv-01942-IM, 2024 WL 3316199, at *7 (D. Or. July 5, 2024), does not support that a 48-hour wait to obtain test results for one employee compromises the hospital's mission or is undue hardship as a matter of law. See *Id.*, (finding when allowing an unvaccinated nurse to continue working in

the mother and baby unit, "allowing staff and patients to be put at risk compromised Defendant's mission to serve the community and keep it safe."). *MacDonald* does not discuss undue hardship in the testing context.

Mr. Profitt cites no specifics in his alleged "proof" that it would take 48 hours to validate an off-site saliva test. Profitt Aff., Doc 21-9, at ¶ 8, Page ID # 459. Profitt identifies no off-site testing centers to which SOMC might send a test, and merely speculates that "getting the specimen to the lab" and "conducting the analysis and reporting its findings" would both take a full 24-hour day. Id.

SOMC's undue hardship argument and the district court's conclusion are undercut by the record evidence. Before SOMC's adoption of technology to validate tests in house, SOMC sent all tests to third party labs, which necessitated a three to seven day turnaround resulting in staffing shortages. SOMC MSJ, R. 21-1, Page ID # 164, citing Blankenship Aff., R. 21-3, at ¶¶ 11-13, Page ID # 253-54, and Profitt Aff., R. 21-9, at ¶¶ 3-4, Page ID # 458. Yet, Ms. Henry was the only SOMC employee to whom SOMC denied accommodation. Blankenship Dep., R. 21-11, at pp. 9-10, Page ID # 485-86. Thus, all employees were vaccinated or took a test that could be validated in house, which still took 24 hours. Profitt Aff., R. 21-9, at ¶ 7, Page ID # 459. The district court was not justified in concluding that providing off-site saliva testing to one employee, which *might* take 48 hours to validate, would cause undue hardship and "compromise[] SOMC's mission to

'serve the community and keep it safe.'" Opinion, R. 32, Page ID # 729, quoting *MacDonald*, supra. Compared to SOMC's earlier practice of sending all tests offsite, which allegedly caused staffing shortages, it cannot be argued that staffing shortages would result from accommodating one employee with a test that requires substantially less time than what was earlier required. The district court's findings were not warranted.

The district court's finding rests on speculation, which is not enough in this Circuit. Nor can SOMC prove undue hardship by mere speculation. On one speculative assertion, the district court determined it would certainly take at least 48 hours to validate a saliva test, cited a case that does not support its conclusion, and found undue hardship. The district court erred in finding that SOMC would have experienced undue hardship from letting one employee take a saliva test that might take 48 hours to validate.

### H. The district court erred in determining Ms. Henry's affidavit was an attempt to create a sham fact issue.

A party cannot create a genuine issue of material fact by filing an affidavit that essentially contradicts his earlier deposition testimony. *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 906 (6th Cir.2006). A party who was not directly questioned about an issue, however, will not be prevented from "supplementing incomplete deposition testimony with a sworn affidavit." *Id.* at 907. That affidavit "fills a gap" and "provides the district court with more information, rather than

33

less, at the crucial summary judgment stage." *Id.* It is not the deponent's duty to volunteer information not fairly sought by the questioner. *Id.* The court must determine whether the affidavit "directly contradicts" the party's prior sworn statement. *Id.* at 908. If there is no "direct contradiction" the court "should not strike or disregard that affidavit unless the court determines that the affidavit constitutes an attempt to create a sham fact issue." *Id.* The existence of a sham fact issue turns on:

> whether the affiant was cross-examined during his earlier testimony, whether the affiant had access to the pertinent evidence at the time of his earlier testimony or whether the affidavit was based on newly discovered evidence, and whether the earlier testimony reflects confusion [that] the affidavit attempts to explain.
> *Id.* at 909.

The inquiry into whether an affidavit tries to create a sham issue of fact begins by examining the deposition testimony and the allegedly conflicting affidavit. Where a deposition question is vague and capable of different interpretations, it is difficult for a court to find that an affidavit later contradicts the testimony. See, for example, *Great W. Cas. Co. v. Flandrich*, 605 F. Supp. 2d 955 (S.D. Ohio 2009). In *Flandrich*, the court found no contradiction between a deponent's deposition statement and summary judgment affidavit because questioning counsel's follow up question was vague and capable of different interpretations. *Id.*, at 970-71.

Here, the district court found Henry's affidavit "plainly contradicts her deposition testimony" since "in her deposition, Henry couldn't remember if she asked about 'other forms' of testing, yet eight months later, she was sure that she did." Opinion, R. 32, p. 12, Page ID # 725. The district court's findings were based on the following part of Ms. Henry's deposition wherein she recalls the conversation she had with Mr. Applegate and Ms. Blankenship:

Q.    Okay. Did you say anything during that conversation?
A.    **I just stated I was not going to agree to weekly testing, that form of weekly testing, and asked if there was any other forms of testing that was acceptable.** And he said no, there's not. I had to do that specific one.
Q.    Did you have any other types of testing that you suggested or recommended, or did you just ask if they had other ones?
A.    **I asked if there was something – any other types that was less invasive.** I was willing to spit in a – like, there's a type that you can spit in a cup.
Q.    **Did you talk about that with Mr. Applegate, or is that just something you knew of?**
A.    **That was something I knew of. I don't remember if I did ask them or not.**
Q.    **Okay. Whether or not there were other forms of testing?**
A.    **Correct.**
Id. (emphasis in Opinion).

And Ms. Henry's Affidavit (shortened to emphasized portions for brevity):

[…]
**I asked if I could take a different type of test, to which Mr. Applegate told me I could not.**
[…]
**I would have agreed to do a different test such as the oropharyngeal, or "throat swab" test.**
[…]
**I would have also accepted the "anterior nares" test** […]

35

[…]
**Preferably I would have taken a saliva test** […]
[…]
Id. (emphasis in Opinion).

In reaching its conclusion the district court misreads a vague follow up question and the answer to that question.

As in *Flandrich*, counsel's follow up question, "whether or not there were other forms of testing," is vague, or at least can create ambiguity for the reader. Before that question was posed, however, Ms. Henry already testified that she asked if any other forms of testing were acceptable, and later verified this by Affidavit. Henry Dep., R. 21-4, at pp. 52-53, Page ID # 325-36; Henry Aff., R. 25-1, ¶ 8, Page ID # 634. The reasonable reading of the excerpt of Ms. Henry's affidavit and her deposition excerpt is simple – Ms. Henry asked during the phone call whether she could take a different type of test, but she could not recall whether she asked about any *particular* alternative testing method. Ms. Henry never claimed to have asked about specific forms of testing, just that she inquired generally about whether there was another test she could take. See Henry Aff., R. 25-1, ¶ 9, Page ID # 634. Since Ms. Henry was not asked about anterior nares or oropharyngeal testing at deposition, she was free to fill this gap via affidavit. See *Aerel, S.R.L. v. PCC Airfoils, L.L.C.,* 448 F.3d 899, 906 (6th Cir.2006). Unlike in *Flandrich*, however, the district court interpreted this exchange unreasonably favoring SOMC. Since the follow-up question posed to Ms. Henry is and was

36

reasonably interpreted as a follow-up to whether she asked about <u>specific forms of testing</u> rather than the availability of <u>other tests generally</u>, the district court erred in disregarding Ms. Henry's affidavit as an attempt to create a sham issue of fact.

SOMC did not argue in its reply brief for the interpretation put forth by the district court. SOMC acknowledged the distinction between Ms. Henry's general inquiry about other tests and a specific inquiry about various other forms of testing. SOMC Reply, R. 26, Page ID # 688-89. SOMC argued the sham issue was that Ms. Henry did not state she would have taken an oropharyngeal or anterior nares test during her deposition. SOMC Reply, R. 26, Page ID # 688-89. SOMC states, "Henry was previously deposed on this issue, and the affidavit is plainly not based on newly discovered evidence." SOMC Reply, R. 26, Page ID # 688. Both conclusions are wrong.

Ms. Henry's deposition was taken first, and she did not learn that SOMC offered other forms of testing until after SOMC depositions took place. While Ms. Henry does not directly claim this in her affidavit, she confirms these tests were never offered to her or suggested by SOMC personnel. Henry Aff., R. 25-1, Page ID # 634, ¶ 9. It logically follows if these tests were never brought to her attention by SOMC personnel nor in deposition, she would have no basis to address this in deposition.

SOMC concludes that Ms. Henry knew of the oropharyngeal and anterior nares tests at the time of her deposition by claiming she testified that she had seen an e-mail which attached the "FAQ" referencing oral pharyngeal testing (for people with verified medical reasons to avoid nasopharyngeal testing). SOMC Reply, R. 26, Page ID # 689, citing Henry Dep. at 20:18-25, R. 21-4 at Page ID # 293. While Ms. Henry confirmed she received and reviewed the email, she was not asked anything about the attached FAQ or whether she reviewed that document. See Henry Dep., R. 21-4 at Page ID # 293-94. Tellingly, SOMC never argues in its Reply that Ms. Henry saw the FAQ, only the email. By implication, SOMC's intent was to have the court believe she affirmed that she saw the FAQ as well. SOMC impliedly suggests Ms. Henry was supposed to then state, unprompted, she would take that test, and, since she did not do that her affidavit stating the same is an attempt to create a sham fact issue. SOMC's argument fails.

The district court erred in finding Ms. Henry's Affidavit was an attempt to create a sham fact issue. Ms. Henry's Affidavit does not contradict her deposition. Regardless, the burden is on SOMC to seek accommodation for Ms. Henry, and SOMC's responsibilities are not changed by Ms. Henry's inquiry or lack thereof.

## I. Other Courts have denied summary judgment where evidence of undue hardship was insufficient to take the issue from the jury.

Many courts have denied summary judgment in the Covid-19 vaccine mandate context, including cases in the healthcare setting. These courts have found

that evidence of the general dangers of Covid-19 and public health authority guidance about vaccination inadequate to satisfy the fact specific undue hardship inquiry.

In *Malone v. Legacy Health*, No. 3:22-CV-01343-HZ, 2024 WL 3316167 (D. Or. July 5, 2024), the court denied summary judgment where the plaintiff was a respiratory therapist, in a hospital trauma unit, treating patients infected with Covid-19. *Id.*, at *4. Citing to Groff's requirement of a "fact-specific inquiry," the *Malone* court held it was not enough to establish the dangers of Covid-19 and the vulnerabilities of the hospital's patients; the court found the record inadequate regarding whether the defendant made an "individualized inquiry" into possible accommodations for the plaintiff. *Id*. The plaintiff in *Malone* identified additional testing as a safety measure to offer as an accommodation, and the court stated the record was ambiguous as to "why [additional testing] would not be sufficient." *Id*. The court held "[a] reasonable jury could find that accommodating Plaintiff was not [a] substantial burden in the context of Defendant's business." *Id*.

In *Floyd v. Trinity Cent. Home Health, LLC*, No. 6:22-CV-06117, 2024 WL 3653055 (W.D. Ark. Aug. 5, 2024), the court denied summary judgment to a home healthcare company working with "critical pediatric patients" based on the lack of actual evidence either of substantial increased costs, or that safety measures such

as masking and testing would not be effective. *Id.*, at *7. The court noted the fact intensive inquiry required by *Groff v DeJoy*. *Id.*

In *Gray v. Main Line Hosps., Inc.*, 717 F. Supp. 3d 437 (E.D. Pa. 2024), the court denied summary judgment to a hospital in an action brought by an emergency room nurse denied accommodation to the hospital's Covid-19 vaccine mandate. The defendant argued "each vaccine exemption poses a significant risk to the health and safety of employees and patients." *Id.*, at 448. The plaintiff argued there was no evidence to suggest why observing other safety measures would have created an undue hardship for the defendant. *Id.*, at 449. Both parties offered expert testimony. The *Gray* court found "the evidence is such that a reasonable jury could find for either party on the issue of undue hardship." *Id.*, at 449. Like the defendant in *Gray*, SOMC failed to produce evidence showing undue hardship would result from letting Ms. Henry take an alternative test available to SOMC nor that a 48 hour turnaround time for an off-site saliva test would create undue hardship. Summary judgment was inappropriate in this case.

In *Scafidi v. B. Braun Med., Inc.*, 713 F. Supp. 3d 1231 (M.D. Fla. 2024), the defendant argued the administrative costs associated with ensuring the plaintiff, a medical sales representative, received accommodation from each hospital she visited would cause undue hardship. While the defendant provided evidence that there would be increased costs and administrative difficulties if the plaintiff was

accommodated, the court denied summary judgment because the defendant failed to present "any estimate of the costs it would have incurred if it had allowed [plaintiff] to retain her position without getting vaccinated." *Id*., at 1245. Further, the court found the record did not show "that any of the hospital systems in [plaintiff's] territory had denied her access or denied her requests for a religious exemption submitted through the hospitals' vendor credentialing systems at the time of her termination." *Id*. Thus, the court held, "A genuine dispute of material fact exists as to whether [defendant] would have suffered an undue hardship if it had allowed [plaintiff] to stay in her customer-facing position without getting vaccinated." *Id*.

As for non-medical settings, in *Hayslett v. Tyson Foods, Inc.*, No. 1:22-CV-1123-STA-JAY, 2023 WL 11897503 (W.D. Tenn. Sept. 20, 2023), the court denied the defendants' summary judgment motion on plaintiff's failure to accommodate claim, observing "the undue burden test is fact-bound and therefore ill-suited for determination as a matter of law at summary judgment." *Id*., at *13. The defendants relied on "CDC guidance recommending vaccination," tracked employee transmission, and claimed a decrease in deaths and hospitalizations among employees after implementation of the mandate. *Id*., at *2, *13. Still, the court observed, "the undue burden test is not concerned with the wisdom of Defendants' vaccine mandate. The question is whether Defendants could offer an

41

accommodation to Plaintiff without substantially increasing Defendants' costs […]." *Id*. The court found none of the "proof shows how accommodating Plaintiff and any impact the accommodation had on Defendants' operations would have resulted in a substantial increase of costs to Defendants." *Id*. The same is true here.

In *Cox v. Nw. Reg'l Educ. Serv. Dist.*, No. 3:22-CV-01073-HZ, 2024 WL 777598 (D. Or. Feb. 23, 2024), the court similarly found that mere considerations of the population served (students, many affected by disabilities), and potential impact on other staff members were not enough to establish undue hardship because others could work in person. Compare Opinion, R. 32, Page ID # 726 (finding, "Henry's request for an accommodation to be exempt from *both* vaccination *and* testing, no matter the type, poses an obvious threat to her coworkers and to SOMC's vulnerable-by-definition patient population. This, by and of itself, constitutes undue hardship.") (internal citations omitted).

These cases show the importance of relying on facts and record evidence in assessing undue hardship, and to assess primarily whether defendant offered evidence demonstrating undue hardship would result from accommodating a plaintiff.

Here, SOMC offers the same generalized evidence arguing its policy was reasonable under the circumstances. Like the defendants in the cases discussed above, however, SOMC offers no evidence of actual hardship, let alone undue

hardship, that would result from letting Ms. Henry take an alternative test. SOMC failed to meet its burden on summary judgment, and the district court erred in ruling otherwise. For these reasons the district court's decision should be reversed, and this case remanded for further proceedings.

### J. SOMC did not fulfill its obligations under Title VII and failed to show undue hardship; the district court erred in finding SOMC established undue hardship.

SOMC failed to meet its burden under Title VII and *Groff* to show that accommodating Ms. Henry would result in substantial increased costs to its business. SOMC had readily available alternatives to nasopharyngeal testing, including oropharyngeal and anterior nares tests that could be validated on-site, yet never explored these options with Ms. Henry. SOMC's speculation about a 48-hour turnaround time for one employee's saliva test is insufficient to establish undue hardship. The district court improperly resolved factual disputes in SOMC's favor, mischaracterized Ms. Henry's objection as being to all testing despite evidence to the contrary, wrongly discredited her Affidavit, and accepted SOMC's unsubstantiated claims of undue hardship. This generalized and speculative evidence is not enough to establish undue hardship as a matter of law. The district court's grant of summary judgment should be reversed and this case remanded for further proceedings.

### III.    Assignment of Error II: The District Court erred in granting summary judgment for SOMC's on Ms. Henry's retaliation claim.

A plaintiff "may prove unlawful retaliation by presenting direct evidence of such retaliation or by establishing a *prima facie* case under the *McDonnell Douglas* framework." *Abbott v. Crown Motor Co.,* 348 F.3d 537, 542 (6th Cir.2003). "The burden of establishing a *prima facie* case in a retaliation action is not onerous, but one easily met." *Mickey v. Zeidler Tool & Die Co.,* 516 F.3d 516, 523 (6th Cir.2008) (internal quotation omitted).

Where direct evidence of retaliation is not presented, Ms. Henry may plead circumstantially four elements: (1) she engaged in a protected activity under Title VII, (2) her exercise of protected rights was known by Defendants, (3) Defendants took adverse employment action against Ms. Henry, and (4) there was a causal connection between the adverse employment action and the protected activity. See *Taylor v. Geithner*, 703 F.3d 328, 336 (6th Cir. 2013). "[O]pposing any practice that the employee reasonably believes to be a violation of Title VII" is protected activity. *Johnson v. Univ. of Cincinnati*, 215 F.3d 561, 579 (6th Cir. 2000).

One way a plaintiff can show a causal connection is to show close temporal proximity between the adverse employment actions and the protected activity. *Upshaw v. Ford Motor Co.,* 576 F.3d 576, 588 (6th Cir.2009). The Sixth Circuit has held that more evidence is required only when some time has passed. *Zeidler Tool & Die Co.,* 516 F.3d at 525 (6th Cir.2008). If there is a close temporal

proximity, then no other evidence is needed. *Geithner*, 703 F.3d at 339 (6th Cir. 2013). Periods of months have been considered "close temporal proximity" in other Sixth Circuit cases. See *Upshaw v. Ford Motor Co.*, 576 F.3d 576, 588–89 (6th Cir. 2009); see also *Hamilton v. Gen. Elec.,* 556 F.3d 428, 436 (6th Cir.2009).

This Court has urged caution in granting summary judgment for an employer once a plaintiff establishes a *prima facie* case because "an employer's true motivations are particularly difficult to ascertain" and are "elusive." *Singfield v. Akron Metro. Hous. Auth.*, 389 F.3d 555, 564 (6th Cir. 2004) (citing *Tex. Dept. of Cmty. Affairs v. Burdine*, 450 U.S. 248, 255 n.8, 101 S.Ct. 1089, 1094 n.8, 67 L.Ed.2d 207 (1981)).

SOMC's failure to explore alternative accommodation for Ms. Henry, and placing her on indefinite unpaid leave, were retaliation for her complaints of religious discrimination. The district court misconstrued, if not ignored, material parts of Ms. Henry's argument to dismiss her retaliation claim. The district court stated, "Henry responds that she 'preemptively objected' to SOMC's (anticipated) failure to accommodate in her letters dated September 3 & 14, 2021, in which she advised that '[r]etaliation is against the law.' (*See, e.g.*, Doc. 21-3 PAGEID 266)." Opinion, R. 32, Page ID # 730. The district court then found Ms. Henry "cites no authority to support "her novel theory of preemptive protected activity." Id. However, the district court ignores the fact that Ms. Henry's September 14, 2021

letter was sent after her call with Mr. Applegate and Ms. Blankenship, when she

believed that her accommodation request would be denied. Blankenship Aff., Ex.

C, R. 21-3, Page ID # 273-74. This letter was not "preemptive," but was opposition

to what Ms. Henry perceived as a violation of the law after that violation occurred,

specifically citing Title VII of the Civil Rights Act. Id. For this reason, the district

court's finding that Ms. Henry tried to advance a "preemptive" objection does not

comport with all relevant facts.

The district court also found, "Henry presents no evidence that SOMC's

concern about the spread of the COVID-19 virus was less than bona fide and, so,

pretextual. (Doc. 21-1 PAGEID 186–87)." Opinion, R. 32, Page ID # 729. This

misunderstands the basis on which Ms. Henry can establish pretext.

"A plaintiff can demonstrate pretext by showing that the proffered reason (1)

has no basis in fact, (2) did not actually motivate the defendant's challenged

conduct, or (3) was insufficient to warrant the challenged conduct." *Dews v. A.B.

Dick Co.,* 231 F.3d 1016, 1021 (6th Cir.2000). "However, the plaintiff may also

demonstrate pretext by offering evidence which challenges the reasonableness of

the employer's decision to the extent that such an inquiry sheds light on whether

the employer's proffered reason for the employment action was its actual

motivation." *White v. Baxter Healthcare Corp.*, 533 F.3d 381, 393 (6th Cir. 2008)

(internal citations omitted).

There is record evidence to establish the three bases for pretext as recognized in *Dews*, supra. Given SOMC granted every other accommodation requested, a reasonable jury could conclude that SOMC's concern about the spread of Covid-19 is pretext for denying Ms. Henry's accommodation request. Since SOMC argues Ms. Henry objected to all testing (which is false) and that on that assumption SOMC did not attempt to offer Ms. Henry any accommodation, Ms. Henry can show that SOMC's reason for denying her request had no basis in fact. There is record evidence to establish SOMC's decision was unreasonable, especially given the availability of other tests and the admitted failure to pursue any alternative. That the district court does not believe Ms. Henry's evidence, or does not favor it, does not justify the district court's finding that Ms. Henry put forth no evidence to establish pretext. The district court's reasoning is circular; it accepts SOMC's explanation for its decision as proof the explanation is valid. This flawed logic undermines pretext analysis, since it would allow any employer's stated reason to validate itself.

Since Ms. Henry offered evidence that SOMC's denial of her accommodation was unreasonable under the circumstances, and that she complained of unlawful retaliation after she believed her accommodation request would be denied, Ms. Henry established the *prima facie* case for retaliation and

offered evidence that SOMC's rationale for placing her on unpaid leave was pretextual. A jury could reasonably find for Ms. Henry on her retaliation claim.

In response, SOMC may argue the honest belief rule but, even if successful, this only prevents Ms. Henry from establishing pretext through the "falsity of the reason offered" method; she may still establish pretext through the other two prongs, actual and insufficient motivation. See *Bruce v. Levy Premium Foodservices Ltd. P'ship of Tennessee*, 324 F. Supp. 3d 962, 971 (M.D. Tenn. 2018), citing *Joostberns v. United Parcel Servs., Inc.*, 166 F. App'x 783, 794, n.5 (6th Cir. 2006); *but see Rhoades v. Standard Parking Corp.*, 559 F. App'x 500, 507 (6th Cir. 2014) (noting without overruling *Joostberns* in dicta that the case was "nonbinding authority," ultimately concluding on other grounds). Since questions exist as to whether SOMC had a basis to terminate Ms. Henry due to an alleged undue hardship, and whether SOMC's proffered reasons were sufficient to warrant terminating Ms. Henry, the district court erred in granting summary judgment in SOMC's favor on Ms. Henry's retaliation claim.

For these reasons the district court erred in granting summary judgment in SOMC's favor on Ms. Henry's retaliation claim. This Court should reverse and remand Ms. Henry's retaliation claim to the district court for further proceedings.

## CONCLUSION

For the above reasons the district court's judgment dismissing the subject case should be reversed and the case should be remanded for further proceedings under law.

Respectfully submitted,

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Brian Unger (0096884)
MENDENHALL LAW GROUP
190 North Union Street, Suite 201
Akron, Ohio 44304
(330) 535-9160
warner@warnermendenhall.com
brian@warnermendenhall.com

*Attorneys for Plaintiff-Appellant*
*Christina Henry*

## CERTIFICATE OF COMPLIANCE

I certify this brief complies with the type-volume limitation of Fed. R. App. P. 32(a)(7)(B) because it contains 11,404 words, excluding the parts of the brief exempted by Fed. R. App. P. 32(f).

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Attorney for Plaintiff-Appellant

## CERTIFICATE OF SERVICE

I, Warner Mendenhall, counsel for Plaintiff-Appellant and a member of the Bar of this court, certify that, on December 24, 2024, a copy of the Brief of Plaintiff-Appellant was filed electronically through the appellate CM/ECF system with the Clerk of the Court. I further certify that all parties required to be served have been served.

/s/ Warner Mendenhall
Warner Mendenhall (0070165)
Attorney for Plaintiff-Appellant

**DESIGNATION OF DISTRICT COURT DOCUMENTS**
*Christina Henry v. Southern Ohio Medical Center*
No. 1:22-cv-00679

| Docket Entry No. | Description | Page ID # |
|---|---|---|
| 1 | Complaint | 1-12 |
| 7 | Defendant's Answer | 23-36 |
| 13 | Defendant's Motion to Exclude Plaintiff's Expert Witness | 54-55 |
| 13-1 | Defendant's Memorandum in Support of Motion to Exclude | 56-67 |
| 13-2 | Exhibit 1 to Defendant's Motion to Exclude | 68-76 |
| 13-3 | Exhibit 2 to Defendant's Motion to Exclude | 77-80 |
| 13-4 | Exhibit 3 to Defendant's Motion to Exclude | 81-85 |
| 13-5 | Exhibit 4 to Defendant's Motion to Exclude | 86-89 |
| 13-6 | Exhibit 5 to Defendant's Motion to Exclude | 90 |
| 13-7 | Exhibit 6 to Defendant's Motion to Exclude | 91-93 |
| 13-8 | Exhibit 7 to Defendant's Motion to Exclude | 94-104 |
| 15 | Plaintiff's Motion to Exclude Defendant's Expert | 109-110 |
| 15-1 | Plaintiff's Memorandum in Support of Motion to Exclude | 111-117 |
| 16 | Defendant's Reply in Support of Motion to Exclude | 118-121 |
| 17 | Defendant's Opposition to Plaintiff's Motion to Exclude | 122-126 |
| 17-1 | Exhibit to Defendant's Opposition to Plaintiff's Motion to Exclude | 127-131 |
| 18 | Plaintiff's Reply in Support of Motion to Exclude | 132-135 |
| 21 | Defendant's Motion for Summary Judgment | 149-151 |
| 21-1 | Defendant's Memorandum in Support of Motion for Summary Judgment | 152-188 |
| 21-2 | Exhibit 1, Deposition of Vicki Noel | 189-251 |
| 21-3 | Exhibit 2, Declaration of Sara Blankenship and Exhibits thereto | 252-273 |
| 21-4 | Exhibit 3, Deposition of Christina Henry | 274-377 |
| 21-5 | Exhibit 4, Deposition of Kendall Applegate | 378-428 |
| 21-6 | Exhibit 5, Attorney emails | 429-430 |
| 21-7 | Exhibit 6, Declaration of Ken Applegate | 431-440 |
| 21-8 | Exhibit 7, Declaration of Dr. David Byers | 441-457 |

| 21-9 | Exhibit 8, Declaration of Brad Profitt | 458-459 |
| 21-10 | Exhibit 9, Declaration of Dr. Timothy Cassity, PhD | 460-476 |
| 21-11 | Exhibit 10, Deposition of Sara Blankenship | 477-526 |
| 21-12 | Exhibit 11, Deposition of Patricia Bryan | 527-591 |
| 21-13 | Exhibit 12, Declaration of Teresa Bryan | 592-594 |
| 21-14 | Exhibit 13, Declaration of Vicki Noel and Exhibits thereto | 595-604 |
| 23 | Joint Stipulation of Dismissal of Counts III and IV | 608 |
| 24 | Order severing and dismissing Counts III and IV | 610-612 |
| 25 | Plaintiff's Opposition to Defendant's Motion for Summary Judgment | 613-632 |
| 25-1 | Exhibit 1, Declaration of Christina Henry | 633-635 |
| 25-2 | Exhibit 2, Deposition of Timothy Robert Cassity, Ph.D. | 636-677 |
| 26 | Defendant's Reply to Plaintiff's Opposition to Defendant's Motion for Summary Judgment | 678-695 |
| 26-1 | Exhibit 1, Declaration of Sara Blankenship | 696-698 |
| 26-2 | Exhibit 2, Noel email with FAQ attachment | 699-703 |
| 27 | Defendant's Notice of Supplemental Authority | 704-705 |
| 28 | Plaintiff's Notice of Supplemental Authority | 706-707 |
| 29 | Defendant's Notice of Supplemental Authority | 708-709 |
| 30 | Plaintiff's Notice of Supplemental Authority | 710-711 |
| 31 | Defendant's Notice of Supplemental Authority | 712-713 |
| 32 | Opinion and Order granting Defendant's Motion for Summary Judgment | 714-730 |
| 33 | Judgment Entry of Dismissal | 731 |